UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:17-CV-00148-TBR

RONNIE SANDERSON,  PLAINTIFF

v.

WAL-MART STORES EAST, L.P.,  DEFENDANT

**Memorandum Opinion & Order**

This matter comes before the Court upon Motion by Defendant Wal-Mart Stores East, L.P., ("Wal-Mart"), for summary judgment. [DN 13.] Plaintiff Ronnie Sanderson, ("Sanderson"), has responded, [DN 15], and Wal-Mart has replied. [DN 16.] This matter is ripe for adjudication and, for the reasons that follow, **IT IS HEREBY ORDERED** that Wal-Mart's Motion, [DN 13], is **DENIED**.

**A. Background**

This case arises out of events which occurred on November 3, 2016 at a Wal-Mart store located in McCracken County, Kentucky. [DN 1-2, at 2.] Sanderson was a Wal-Mart patron and, on that date, he entered the store in question at approximately 9:56 a.m. [DN 13-1, at 2; *see also* DN 13-2, (Shannon Larkins Affidavit).] The store's security camera footage, attached to Wal-Mart's instant Motion, confirms this. [*See id.*] Immediately upon entering the store, and walking out of view of the security camera, Sanderson slipped and fell down, fracturing his right knee cap. [DN 15, at 1.] A couple of minutes before Sanderson entered the store that morning, the security camera footage shows another Wal-Mart patron tip over a cup she had placed in the upper basket of her shopping cart. [DN 13-2, (Security Camera Footage).] The patron quickly turns the cup back upright as she leaves the screen, as if to prevent or limit a spill. [*Id.*] It is

1

uncontested that some sort of "yellow liquid substance" was present on the floor near the store's entrance in the area where Sanderson fell. [*See* DN 13-1, at 3.]

Sanderson originally filed this lawsuit in McCracken County, Kentucky Circuit Court on August 11, 2017. [DN 1-2.] On September 26, 2017, Wal-Mart removed the case to the Western District of Kentucky. [DN 1.] Now, Wal-Mart seeks summary judgment. [DN 13.] The merits of this Motion are discussed below.

## B. Legal Standard

This case was removed to federal court on the basis of diversity jurisdiction, pursuant to 28 U.S.C. § 1332. However, as Kentucky remains the forum state, this Court will apply Kentucky substantive law. *See Himmel v. Ford Motor Co.*, 342 F.3d 593, 598 (6th Cir. 2003). Notwithstanding this, "federal procedural law will govern as applicable, including in establishing the appropriate summary judgment standard." *Johnson v. Wal-Mart Stores East, L.P.*, 169 F. Supp. 3d 700, 702-03 (E.D. Ky. 2016) (citing *Weaver v. Caldwell Tanks, Inc.*, 190 F. App'x 404, 408 (6th Cir. 2006)).

Federal Rule of Civil Procedure 56 instructs that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." Fed. R. Civ. P. 56(a). "In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party." *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Further, "[t]he judge is not to 'weigh the evidence and determine the truth of the matter but to

determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

"The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists." *Am. Guarantee and Liability Ins. Co. v. Norfolk S. Rwy. Co.*, 278 F. Supp. 3d 1025, 1037 (E.D. Tenn. 2017) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The movant "may discharge this burden either by producing evidence that demonstrates the absence of a genuine issue of material fact or simply 'by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Celotex*, 477 U.S. at 325). If the movant carries his or her burden here, "[t]he non-moving party…may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Matsushita*, 47 U.S. at 586). Finally, "[t]he mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to defeat a motion for summary judgment; there must be evidence on which the jury could reasonably find for the non-moving party." *Id.* (internal citations and brackets omitted). This means that "[i]f the [non-moving] party fails to make a sufficient showing on an[y] essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment." *Am. Guarantee and Liability Ins. Co.*, 278 F. Supp. 3d at 1037 (citing *Celotex*, 477 U.S. 323).

### C. Discussion

"This is a negligence case, which requires proof that (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached the standard by which his or her duty is measured, and (3) consequent injury." *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88 (Ky. 2003) (citations

omitted). "'Consequent injury' consists of what hornbooks separate into two distinct elements: actual injury or harm to the plaintiff *and* legal causation between the defendant's breach and the plaintiff's injury." *Id.* at 88-89 (citations omitted). "The element of duty is a question of law for the court to decide, breach and injury are questions of fact for the jury to decide, and causation is a mixed question of law and fact." *Johnson*, 169 F. Supp. 3d at 703 (citing *Pathways*, 113 S.W.3d at 89). A court is precluded from entering summary judgment in favor of a defendant where there remains "a genuine dispute as to any material fact concerning the elements of duty, breach, or causation, such that a reasonable jury could find that [the defendant] was negligent…." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). This is a "slip-and-fall" case involving a commercial business, Wal-Mart, and a patron of one of its stores, Sanderson. Accordingly, this Court looks to firmly established Kentucky law concerning premises liability and the duties and responsibilities placed upon business owners with respect to their customers.

"Under Kentucky law, a property owner, such as Defendant, must exercise reasonable care to protect invitees, such as Plaintiff, from hazardous conditions that the property owner knew about or should have discovered and the invitee could not be expected to discover." *Denney v. Steak N Shake Operations, Inc.*, 559 F. App'x 485, 487 (6th Cir. 2014) (citing *Lanier v. Wal-Mart Stores, Inc.*, 99 S.W.3d 431, 432-33 (Ky. 2003)). As the Sixth Circuit Court of Appeals, applying Kentucky law, has instructed, "[t]he plaintiff must ultimately prove negligence on the part of the property owner," but in order "to survive a motion for summary judgment, a plaintiff need only show" the three following things: "'(1) he or she had an encounter with a foreign substance or other dangerous condition on the business premises; (2) the encounter was a substantial factor in causing the accident and the customer's injuries; and (3)

by reason of the presence of the substance or condition, the business premises were not in a reasonably safe condition for the use of business invitees.'" *Id.* (quoting *Martin v. Mekanhart Corp.*, 113 S.W.3d 95, 98 (Ky. 2003)). Should the plaintiff succeed in showing these three things, "the burden shifts to the defendant to prove the absence of negligence." *Id.* (citing *Bartley v. Educ. Training Sys., Inc.*, 134 S.W.3d 612, 616 (Ky. 2004)). This burden-shifting approach to slip-and-fall cases was announced in 2003 by the Kentucky Supreme Court in *Lanier* in an effort to find a middle ground in the area of premises liability law, preserving the maxim "that a business is not an insurer of its patrons' safety and is not strictly liable for injuries suffered by a customer on its premises." *Lanier*, 99 S.W.3d at 436 (citations omitted).

In the present case, with respect to the *Lanier* analysis, Wal-Mart states the following:

> [t]here is no genuine issue as to the material fact of what caused Sanderson to slip and fall in the Wal-Mart store…Necessarily this motion must be decided in the light of *Lanier v. Wal-Mart Stores, Inc.*, 99 S.W.3d 431 (Ky. 2003). Sanderson has sustained his burden [of] creating a rebuttable presumption of negligence sufficient to avoid summary judgment on that account, and the burden [has] shifted to Wal-Mart to prove it exercised reasonable care.

[DN 13-1, at 7.] Thus, the Court will presume for purposes of this Motion that Sanderson has succeeded in showing the three above-listed elements, meaning that the burden-shifting process has already occurred, and in order for Wal-Mart to prevail on its Motion, it must "prove the absence of negligence." *See Denney*, 559 F. App'x at 487.

After conceding that Sanderson has sustained the initial burden placed upon him, Wal-Mart cites to this Court's previous decision in *Woltman v. Pepsi Mid-America Co.*, No. 5:07-cv-74-R, 2008 WL 2038880 (W.D. Ky. May 12, 2008) as support for its position that summary judgment is appropriate here. There, this Court noted that "even if it had applied the *Lanier* burden shifting approach Kroger would still be entitled to summary judgment," because, "after *Lanier*, although the plaintiff may meet his or her initial burden, the defendant may still succeed

5

on a motion for summary judgment if the defendant can prove 'that it exercised reasonable care in the maintenance of the premises under the circumstances.'" *Id.* at *3 (quoting *Lanier*, 99 S.W.3d at 435). In *Woltman*, this Court granted summary judgment to Kroger because Pepsi Mid-America was responsible for stocking the beverage shelves with Pepsi products, and the plaintiff's own testimony indicated "that she was hit with the bottle immediately after the Pepsi representative placed a case of cans on the shelf directly in front of her, the force of which caused the bottle to fall." *Id.* at*4. Thus, "Kroger could not have discovered the dangerous condition prior to the accident," and it was "entitled to summary judgement under the *Lanier* approach." *Id.* (citing *Lanier*, 99 S.W.3d at 436-37).

Here, Wal-Mart likens the facts of *Woltman* to those of this case, and argues that it only had one minute and thirty-six seconds to discover the hazard and protect customers like Sanderson from it. [DN 13-1, at 8.] Wal-Mart goes on: "[t]he hazard was a small puddle of pale yellow liquid on a light tile floor, not a shovel, a skateboard or even a banana peel or grape," and was "a spill that…went unnoticed by Sanderson who slipped in it." [*Id.*] Additionally, "[t]here was no Wal-Mart associate in the area to discover the almost invisible hazard in that short time interval," which means that, in Wal-Mart's view, it "could not have, in the exercise of reasonable care, discovered the spill of the…liquid…before Sanderson slipped and fell in it." [*Id.*] The "one minute and thirty-six seconds" refers to the length of time in between when the female patron tipped over the cup in the upper basket of her shopping cart and when Sanderson entered the store and slipped on the floor. [*See* DN 16 at 2, (Wal-Mart arguing that "[t]here is no genuine issue as to the material fact that a customer caused a spill onto the tile floor, and Sanderson slipped and fell in it one minute and thirty-six seconds later….").]

However, while the security camera footage does depict a cup in the female patron's shopping cart, that cup tipping over, and her quickly setting it back upright, the footage does *not* show any of the following things: liquid actually pouring out of the cup; any resultant spill on the floor from the cup (or any spill at all); or Sanderson slipping and falling in a resultant pale yellow liquid. Indeed, the security camera footage does not show Sanderson slipping and falling at all. Thus, while Wal-Mart argues that there is no "genuine issue" that the female patron spilled a beverage and that Sanderson slipped in it, the evidence adduced so far does not actually bear out that conclusion. And in Sanderson's Response, he argues as much: "Wal-Mart repeatedly attempts to assert…[that] the liquid tips over in camera sight. Conversely, Sanderson falls in a different area out of view of the camera sight…Defendant is relying solely on speculative allegations to reach the implication that this tipped cup caused the liquid which Sanderson slipped in to come into being on the floor." [DN 15, at 4-5.] In other words, Sanderson has not conceded that the cup was the source of the yellow liquid on the ground, or that the cup in question even had any liquid in it at all. [*Id.*]

Moreover, looking back to *Woltman*, one of the key facts this Court examined in reaching its determination that summary judgment in favor of the defendant was appropriate was that the plaintiff admitted "that she was hit with the bottle *immediately* after the Pepsi representative placed the cans on the shelf…, the force of which caused the bottle to fall." *Woltman*, 2008 WL 2038880, at *4 (emphasis added). Conversely, in this case there has been no such admission. Wal-Mart has not obtained any testimony from the female patron who it contends spilled the pale yellow liquid in question, and so it cannot be definitively said that she did, in fact, cause such a spill. Nor has Wal-Mart obtained testimony from Sanderson indicating that he saw such a spill occur, and/or that he fell in such a spill immediately after it was created. In short, *Woltman*

contained established facts which provided this Court with the necessary answer that summary judgment was appropriate, whereas no such facts have been conclusively established here.

Wal-Mart also draws considerable attention to the fact that, "approximately three minutes before Sanderson's fall, two Wal-Mart associates, Shannon Larkins, ("Larkins") and Brittany Ward ("Ward"), as Asset Protection Manager and Assistant manager respectively of the Wal-Mart store," were in the affected area "and inspected the tile floor where Sanderson slipped and fell, and there was no slip hazard on that floor, no pale yellow liquid less than two feet long and two inches wide as shown in the photograph later taken…." [DN 16, at 1; *see also* DN 19-2, at 3-4, Ward Dep., p. 10-7.] Of course though, there is a large distinction to be made between Wal-Mart's contention that, approximately three minutes before the accident, there was no pale yellow liquid on the floor, and the more appropriate conclusion that Ward and Larkin did not *see* any pale yellow liquid on the floor (or any other slipping hazard for that matter). The legal standard is that the property owner in question "must exercise reasonable care to protect invitees…from hazardous conditions that the property owner knew about *or should have discovered* and the invitee could not be expected to discover." *Denney*, 559 F. App'x at 487 (emphasis added). Sanderson does not here contend that Ward and Larkin are being untruthful in their testimony that no hazards were discovered during their walkthrough a few minutes prior to his accident, but the question remains whether there was a hazard they should have discovered at that time. Finally, as noted above, Wal-Mart actually references the fact that the spill was one that even "went unnoticed by Sanderson," [DN 13-1, at 8], but this fact only lends itself to Sanderson's argument that the spill was a hazard that he, as an invitee of Wal-Mart, "could not be expected to discover." *Denney*, 559 F. App'x at 487.

Issues remain concerning whether liquid was actually spilled from the unknown patron's cup; whether the pale yellow liquid was from that cup or had already been there and, relatedly, how long the pale yellow liquid had been on the floor; and whether this slipping hazard was already on the floor when Ward and Larkin conducted their walkthrough and they should reasonably have discovered it. Because of this, the Court cannot grant summary judgment, and Wal-Mart's Motion must be denied.

### D. Conclusion

For the reasons stated in this Memorandum Opinion, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** that Wal-Mart's Motion, [DN 13], is **DENIED**.

**IT IS SO ORDERED.**


cc:     Counsel of Record